UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELLEY PINCKNEY,

    Plaintiff,

v.

MARJORIE STARNES SMITH,

    Defendant.

No. CV06-1339 MJP

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on motion for summary judgment by Defendant Marjorie Starnes Smith. Having reviewed the record and the documents submitted by the parties (Dkt. Nos. 1, 5, 13-23), the Court DENIES Defendant's motion.

**Background**

Plaintiff Shelley Pinckney began renting a residential home from Defendant in the Greenlake/Latona neighborhood of Seattle sometime in the summer of 2002. (Derrig Decl., Ex. C, at 5.) The parties did not enter into any formal rental agreement. (Id. at 7.) The home was originally purchased by Defendant in 1973, and Defendant personally resided there until 1984, when she moved to Georgia and became a resident of that state. (Smith Decl. ¶ 2; Compl. ¶ 1.2; Answer ¶ 1.2.) Defendant has rented the home to various residential tenants since that time. (Smith Decl. ¶ 3.) The small 670 square-foot home was built in 1920, and consists of a finished upstairs living area and an

ORDER - 1

unfinished basement. (Derrig Decl., Ex. A.) The occupant must use an exterior stairway to access the basement because there is no interior access. (Id.) The stairway was constructed at the same time as the residence, consists of six steps ("risers"), and does not have handrails. (Smith Decl. ¶ 3; Compl. ¶ 2.4; Answer ¶ 2.4.)

On April 15, 2005, Plaintiff decided to go to the basement to do some laundry. (Compl. ¶ 2.2.) As she stepped outside of the doorway, she caught the heel of her shoe on the cuff of her pants. (Id. at ¶ 2.3.) Caught off balance, Plaintiff's foot was pulled away from the top riser and she fell to her right. (Id.) Plaintiff did not contact anything until she struck the ground, (Derrig Decl., Ex. C, at 16), at which time she suffered a fracture of her femur. (Compl. ¶ 2.6.) Her injury required surgery and a lengthy hospital stay and rehabilitation. (Id. at ¶¶ 2.7, 2.8.) There is no evidence that the stairway's condition caused any other injuries prior to this incident, and neither Plaintiff nor any previous tenant ever requested that Defendant install handrails on the stairway. (Smith ¶ 3.)

On September 11, 2006, Plaintiff filed suit against Defendant in Washington State superior court seeking damages for her injuries. (Compl.) Plaintiff alleges that Defendant failed in her duties as a landlord and breached the warranty of habitability when she failed to install a handrail on the stairway. (Id. at ¶¶ 3.2-3.3.) Defendant properly removed the case to federal court on September 15, 2006. (Dkt. No. 1.)

**Analysis**

I.   Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the

ORDER - 2

initial burden to show the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

II.     Landlord Liability for Defective Conditions on the Leased Premises

In general, a landlord is not liable to a tenant for injuries that are caused by a defective condition on the leased premises. Brown v. Hauge, 105 Wn. App. 800, 804, 21 P.3d 716 (2001); Restatement (Second) of Torts § 356 (1965). However, the Restatement (Second) of Property provides the following exception to the general rule of nonliability:

> A landlord is subject to liability for physical harm caused to the tenant . . . by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
> (1) an implied warranty of habitability; or
> (2) a duty created by statute or administrative regulation.

Restatement (Second) of Property (Landlord & Tenant) § 17.6 (1977). To establish liability under § 17.6, the tenant must show that: (1) the condition was dangerous; (2) the landlord was aware of the condition or had a reasonable opportunity to discover the condition and failed to exercise ordinary care to repair the condition; and (3) the existence of the condition was a violation of an implied warranty of habitability or a duty created by statute or regulation. Lian v. Stalick, 115 Wn. App. 590, 595, 62 P.3d 933 (2003) ("Lian II"). For the purposes of this motion, Defendant concedes that there is an issue of fact on the first element: whether the condition was dangerous. However, Defendant argues that Plaintiff cannot raise an issue of fact on the remaining two elements.

ORDER - 3

A.      Awareness of the Condition

Although Defendant admits that she was aware that the stairway had no handrail, (Smith Decl. ¶ 3) she argues that such knowledge is insufficient. Instead, Defendant argues that she must be placed on notice that the condition is in need of repair. In support of her interpretation of this notice requirement, Defendant cites a case in which the Washington court of appeals held a landlord liable because he was aware that steps were rotted and in need of repair. Lian v. Stalick, 106 Wn. App. 811, 814, 25 P.3d 467 (2001) ("Lian I"). Defendant argues that the poor condition of the stairs in that case was obvious, whereas in the present case, the technical violation of the local housing code did not provide sufficient notice for Defendant to know that the condition was in need of repair. Defendant also argues that the lack of notice is evidenced by the fact that she has owned the property for over thirty years and has never heard of anyone suffering an injury as a result of the stairway's condition and she has never received a request to add handrails.

However, Defendant cites no cases or authority supporting the proposition that actual notice of the dangerous condition is required, and her argument is both illogical and contrary to public policy. First, the Seattle Municipal Code explicitly distinguishes between owners and lessors, placing onerous compliance standards on the latter. See e.g., SMC § 22.206.160(A)(7) (2003) (exempting owner-occupied dwellings from compliance with minimum safety standards). It would be illogical to suggest that the City intended to impose standards on lessors without requiring them to take notice of the standards. For the same reason, it would be illogical to suggest that the legislature would enact the Residential Landlord Tenant Act ("RLTA"), which requires landlords to comply with applicable ordinances relating to health and safety, if the lessor was under no obligation to take notice of building codes.

The parties do not dispute that Defendant had constructive notice of the building code violations. The Seattle Municipal Code requires that all lessors must maintain the rental structure in compliance with Seattle's minimum building standards. SMC § 22.206.160(A)(7). One of the

ORDER - 4

building standards that lessors must comply with requires that all stairways having three or more risers must have a handrail. SMC § 22.206.130(A)(3) (2004). These local building code requirements were in effect at the time Defendant decided to rent the premises to Plaintiff, and Defendant should have examined them before leasing the property.

Second, Defendant's argument runs counter to sound public policy. It would be inappropriate to permit Defendant to insulate herself by relying on her own willful blindness about the defective condition of the rental property. Defendant admits that in the twenty years she has been leasing the property, she has not seen the interior of the home nor had the property inspected for defective conditions. (Clark Decl., Ex. 1, at 41, 43.) Lessors may not shield themselves from liability by consciously ignoring the condition of the property before renting to tenants. Accordingly, constructive notice of a defective condition provides sufficient notice to a landlord to satisfy the second element of the restatement test.

B.  Existence of a Dangerous Condition Violating a Duty

The final element of the restatement test requires evidence that the existing dangerous condition is in violation of either (1) a statute or regulation; or (2) the implied warranty of habitability.

1.  Dangerous Condition in Violation of a Statute or Regulation

Plaintiff cannot survive summary judgment solely by demonstrating a violation of a statute. The statutory violation portion of the restatement rule is predicated on the assumption that a statutory violation constitutes negligence per se. See Rest. 2d Property § 17.6 cmt. a ("[T]he rule of this section is based on the assumption that the statute or regulation represents a legislative determination of the standard of conduct required of the landlord, so that a violation constitutes negligence per se . . . ."). In Washington, "[a] breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence . . . ." RCW 5.40.050 (2004). Therefore, with the abolition of the negligence per se

ORDER - 5

doctrine in Washington, evidence of a statutory violation is insufficient to satisfy the final element of the restatement rule.

The court of appeal's adoption of the restatement rule in <u>Lian II</u> is not to the contrary. <u>Lian II</u> was limited to the question of a violation of the warranty of habitability. Indeed, although that case involved a staircase that violated the building code in five ways, the court confined its analysis to the warranty of habitability. Had the <u>Lian II</u> court held that a statutory violation was sufficient evidence to establish the third element of the restatement test, it would not have addressed the warranty of habitability. Accordingly, Plaintiff must present evidence that the condition violated the warranty of habitability to avoid summary judgment.

### 2.  <u>Violation of the Warranty of Habitability</u>

In Washington, the warranty of habitability has been legislatively codified in the RLTA. <u>See</u> RCW 59.18.060 (2004). The relevant portion of the statute provides as follows:

> The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:
> (1) Maintain the premises to substantially comply with any applicable code, statute, ordinance or regulation governing their maintenance or operation . . . if such condition substantially endangers or impairs the health or safety of the tenant[.]

<u>Id.</u> Similarly, the Seattle Municipal code provides that "[i]t shall be the duty of all owners to . . . [m]aintain the building and equipment in compliance with the minimum standards specified [in the building code]." SMC § 22.206.160(A)(7). The building code requires handrails on stairways with more than six risers. SMC § 22.206.130(A)(3).

Defendant argues that this case does not implicate the warranty of habitability because the RLTA only requires a landlord to "maintain" the rental building. Defendant cites the dictionary definition of "maintain" as "to keep in a state of repair, efficiency, or validity : preserve from failure or decline." (App. 2.) Under this definition, Defendant suggests that the word "maintain" places a duty on the landlord to maintain the property in compliance with existing building codes and eliminates any

ORDER - 6

duty on her part to upgrade the property as building codes change. But in context, the use of the word "maintain" in the RLTA should be read more broadly than Defendant suggests. The word "maintain" in the RLTA is modified by the requirement of compliance with applicable building codes. Thus, a building that is not in compliance with applicable ordinances is not "maintained" for purposes of the law. Accordingly, a landlord is in breach of Washington's statutory warranty of habitability if she fails to maintain the premises in compliance with applicable building ordinances. Defendant does not dispute that the missing handrail violated local building codes, see SMC § 22.206.130(A)(3), and Plaintiff has offered photos of the stairway depicting it without handrails. (Derrig Decl., Ex. E.)

To implicate the warranty of habitability, a defective condition that violates building code requirements must also be dangerous. See RCW 59.18.060. Washington appellate courts have reached opposing conclusions as to what conditions are sufficiently dangerous to qualify a residence as uninhabitable and the Washington Supreme Court has not decided the issue. Division one courts hold that a condition does not violate the warranty of habitability unless the condition is so severe that the dwelling is actually unfit to live in. See Wright v. Miller, 93 Wn. App. 189, 200-01, 963 P.2d 934 (1998). Conversely, division three courts hold that the warranty applies whenever the defects of a structure pose an actual or potential safety hazard to its occupants. Lian I, 106 Wn. App. at 818. In the absence of controlling authority from Washington's highest court, the court must follow the decisions of Washington's intermediate appellate courts unless there is convincing evidence that the highest court would decide the issue differently. See In re Kirkland, 915 F.2d 1236, 1238 (9th Cir. 1990). Because there is a split of authority between the different court of appeals divisions, the Court will determine how the Washington State Supreme Court would decide the issue.

Defendant argues that a dangerous condition does not implicate the warranty of habitability unless the condition is so dangerous that the dwelling is actually unfit to live in. Otherwise, Defendant argues, the first element of the restatement test (existence of a dangerous condition) would be identical to the third element (violation of the warranty of habitability). In support of his argument, Defendant

ORDER - 7

cites two cases from the court of appeals holding that a condition does not make a structure uninhabitable unless the dwelling is actually unfit to live in.  See Wright, 93 Wn. App. 189; Howard v. Horn, 61 Wn. App. 520, 810 P.2d 1387 (1991).  In Howard, the tenant injured himself in a fall and alleged that the injury could have been avoided if the landlord had complied with local building codes requiring handrails and safety glass.  61 Wn. App. at 523.  Relying on the Washington Supreme Court's decision in Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wn.2d 406, 745 P.2d 1284 (1987) (holding that defects in walkways leading to condominiums could render them unfit for their intended purpose), the division three court held that the landlord had not violated the warranty of habitability because the defects complained of did not render the house unfit to live in.  Id. at 525.  Similarly, in Wright, the tenant was injured when he fell down a staircase.  93 Wn. App. at 200.  The stairway lacked a complete handrail, which was a violation of the Seattle building code.  Id.  Relying on Stuart and Howard, the court concluded that the only conditions that violate the warranty of habitability are those which render a dwelling unfit to live in.  Id. at 200-01.

However, in Lian I, division three considered Stuart, Howard, and Wright, and rejected a bright-line rule.  106 Wn. App. at 817.  The court distinguished those cases based on the Washington Supreme Court's decision in Atherton Condominium Apartment-Owners Association Board v. Blume Development Co., 115 Wn.2d 506, 799 P.2d 250 (1990).  In that case, the Court declined to apply Stuart as a general rule, and stated that violations of the warranty of habitability should be determined on a case-by-case basis.  Id. at 520.  The Court stated that building codes pertaining to fire safety were neither trivial nor aesthetic concerns and concluded that the defendant's violation of those codes was sufficiently dangerous to implicate the warranty of habitability.[1]  Id. at 522.  The Lian I court relied on the Court's holding in Atherton when it concluded that the landlord's failure to comply with building

---

[1] Although Washington law treats fire safety protections with special care, see RCW 5.40.050 (exempting fire safety measures from law abolishing negligence per se doctrine), Atherton is still applicable in these circumstances.  A jury could conclude that the breached handrail ordinance was neither aesthetic nor trivial and created serious risk of potential injury.

ORDER - 8

1  codes requiring a handrail and failure to maintain the steps in a useable condition constituted a

2  violation of the warranty of habitability. 106 Wn. App. at 817-18. Summing up the rule, the court

3  stated that a condition violates the warranty if it poses an actual or potential safety hazard to its

4  occupants. Id. at 818.

5  Defendant dismisses the rule stated in Lian I as dictum. Dictum is any statement in a court

6  opinion that is not necessary to the disposition of the case. NLRB v. Int'l Bhd. of Elec. Workers,

7  Local 340, 481 U.S. 573, 592 n.15 (1987). Defendant incorrectly categorizes the Lian I statement as

8  dictum; the stated rule is not dictum because it was necessary to the disposition of the case. If the

9  court had not relied on the rule as stated, it would have been forced to determine whether the dwelling

10  was actually uninhabitable. The court did not find that the dwelling was actually uninhabitable, and

11  dismissed the defendant's argument that it needed to do so as unpersuasive. Lian I, 106 Wn. App. at

12  818.

13  Plaintiff does not need to prove that the building was actually unfit to live in to prove a

14  violation of the warranty of habitability. First, both Howard and Wright relied solely on the older

15  Washington Supreme Court case–Stuart–and did not consider Atherton, which states that questions

16  relating to the warranty of habitability must be made on a case-by-case basis. Atherton is also notable

17  because it involved a discussion of the warranty of habitability in the context of a sale between two

18  owners of property. 115 Wn.2d 506. There is an even stronger case for extending the more flexible

19  Atherton analysis to landlord-tenant disputes in light of the legislature's decision to provide extra

20  protection to tenants when it enacted the RLTA. Second, because Lian I repudiated the Howard

21  decision, it also undermined the foundation of the Wright decision which relied on Howard. Finally,

22  the Washington Supreme Court has stated that although housing code violations do not establish a

23  prima facie case that premises are uninhabitable, they are evidence which aid in establishing that

24  premises are uninhabitable. Foisy v. Wyman, 83 Wn.2d 22, 31, 515 P.2d 160 (1973).

25

As Defendant has stated, determining whether a condition is sufficiently dangerous to violate the warranty of habitability is ultimately one of degree. Defendant is correct that a condition must be more than simply dangerous to violate the warranty, otherwise the first and third elements of the restatement test merge. However, the statutory warranty of habitability in the RLTA contemplates the question of degree, stating that a condition violating an applicable building code is a violation of the warranty if "such condition <u>substantially</u> endangers or impairs the health or safety of the tenant[.]" RCW 59.18.060(1) (emphasis added). Thus, Plaintiff must raise an issue of fact as to whether the building code violation substantially endangered or impaired her health or safety to establish a violation of the warranty of habitability. Because Defendant has conceded the question of dangerousness for the first element, it stands to reason that the level of dangerousness is also an unresolved issue of fact. Accordingly, because Plaintiff has submitted photos of the stairway without handrails, and Defendant has admitted that the stairway failed to comply with local building codes, Plaintiff has raised an issue of fact on the level of dangerousness posed to Plaintiff's health or safety sufficient to preclude summary judgment.

**Conclusion**

Plaintiff may only establish liability on behalf of the Defendant if she can demonstrate that Defendant had notice of the defective condition of the property, and that the condition was a violation of the warranty of habitability. Plaintiff has presented sufficient evidence to generate an issue of fact on each of these points. First, Defendant was aware that the stairway lacked a handrail, and the ordinance requiring a handrail was in force at the time she rented the unit to Plaintiff. Second, Plaintiff produced evidence that the stairway did not comply with building codes, and an issue of fact remains as to the level of dangerousness posed by the non-compliance.

ORDER - 10

Although there is a split in the different divisions of the court of appeals as to what qualifies as "uninhabitable" under the RLTA, this Court concludes that the Washington Supreme Court would hold that Plaintiff does not need to prove that the building was actually unfit to live in to prove a violation of the warranty of habitability. The trend in Washington State Supreme Court cases suggests that unless building code violations are either trivial or aesthetic, violations of those codes implicate the warranty of habitability. Accordingly, Defendant's motion for summary judgment is denied.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: May 1, 2007.

                                          s/Marsha J. Pechman
                                          Marsha J. Pechman
                                          United States District Judge

ORDER - 11